# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHRYN CUTRIGHT<br>63 Yocum Drive<br>Bloomsburg, PA 17815 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | NO.: _____ |
| v. | : <br> : | |
| GEISINGER-BLOOMSBURG HOSPITAL<br>549 Fair Street<br>Bloomsburg, PA 17815 | : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendant. | : <br> : | |

## CIVIL ACTION COMPLAINT

Kathryn Cutright (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by Geisinger-Bloomsburg Hospital of the American's with Disabilities Act, as amended ("ADA" – 42 U.S.C. §§ 12101 *et seq.*) and the Pennsylvania Human Relations Act ("PHRA").[1]   As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes.  She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under the ADA.  Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA.

## JURISDICTION AND VENUE

2.    This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1342(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3.    This Court may properly assert personal jurisdiction over the Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standards set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 325 U.S. 310 (1945) and its progeny.

4.    Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

5.    Plaintiff is proceeding herein under the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right-to-sue-letter from the EEOC.

## PARTIES

6.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.    Plaintiff is an adult individual, with an address as set forth in the caption.

8.    Defendant  Geisinger-Bloomsburg  Hospital  (*hereinafter*  referred  to  as "Defendant") is a non-profit (non-stock) hospital, located at the above-captioned address.

2

9.    At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## **FACTUAL BACKGROUND**

10.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.    In or about early-August of 2017, Defendant offered employment to Plaintiff in either of two separate available positions following an application and interview process with Defendant.

12.    Shortly thereafter, on or about August 8, 2017, Plaintiff accepted a position within the Emergency Department ("ED") of Defendant as a Technician.

13.    Immediately after accepting the position (as discussed *supra*), Defendant's management issued Plaintiff a future starting date on September 11, 2017.

14.    As part of the preliminary process before her start date, Defendant administered various background checks, fingerprinting identification, and a drug-screening test to Plaintiff.

15.    Plaintiff's aforesaid drug-screening test disclosed prescription medications Plaintiff took to manage her disabilities, including but not limited to anxiety.[2]

16.    Upon receiving the aforementioned drug-screening results, on or about August 18, 2017, Plaintiff was contacted by Dr. Michelle Kowalski-McGraw (Director of Employee Health, *hereinafter* "Kowalski-McGraw"), who requested a list of prescription drugs Plaintiff uses, information regarding the dosage of medication she consumes, and proof of medication and dosage in the form of prescription bottles and labels.

---

[2] Plaintiff's prescribed medications are not specified in detail within the face of this Complaint for privacy purposes.

17.     Plaintiff complied with Kowalski-McGraw's requests (as discussed *supra*) and supplied her with the requested information.

18.     Shortly thereafter, Plaintiff received confirmation from Defendant's management that they received her clearances and that she properly submitted all the necessary documentation.

19.     In response to Defendant management's aforesaid confirmation, Plaintiff purchased uniforms in preparation for her upcoming first day of work with Defendant.

20.     In or about mid-August of 2017, Plaintiff was contacted again by Kowalski-McGraw who informed her that there was an alleged problem with the list of prescription drugs she was prescribed, and that Defendant now required Plaintiff be administered a physical examination before starting employment.

21.     Plaintiff again complied with Defendant's pre-employment requests and underwent a physical examination on or about September 7, 2017.

22.     As a result of her aforesaid physical examination, Kowalski-McGraw told Plaintiff that she could not start her employment with Defendant until Plaintiff's primary-care-physician ("PCP") confirmed she was off her currently prescribed anxiety medication or prescribed an alternative medication suggested by Kowalski-McGraw. Kowalski-McGraw told Plaintiff her employment with Defendant hinged on whether she could be weaned off her prescribed medication within four weeks.

23.     Even though Plaintiff had used and needed her prescribed medications for several years due to her serious health conditions, Plaintiff again complied with Kowalski-McGraw's unreasonable and potentially dangerous (due to physical and mental concerns related to withdrawal symptoms) demands and contacted her PCP immediately.

4

24.     The following day, Plaintiff met with her PCP who informed her that withdrawing from her prescribed medication within four weeks was concerning and would be difficult.

25.     As a result of Plaintiff's aforesaid appointment with her PCP, Plaintiff was prescribed a lower dosage of her medication and given a plan to periodically decrease her dosage even further each week, eventually weaning her off the drug completely in about four weeks' time.

26.     As a result of weaning off her prescribed medication, Plaintiff suffered serious withdrawal symptoms that affected her physically and mentally, including but not limited to restlessness, anxiety, and hallucinations while trying to sleep at night.

27.     In or about mid-September of 2017, concerned by Kowalski-McGraw's aforementioned ultimatum (as discussed in Paragraph 22), since Plaintiff had experience working at previous hospitals on the same medication regimen without issue, Plaintiff complained to Carol Walters (Hiring and Operations Manager, *hereinafter* "Walters") of the unfair and discriminatory treatment exhibited against her.  Walters explained to Plaintiff that she never heard of new employees being questioned and tested in a way similar to the cumbersome and unfair manner Kowalski-McGraw was examining Plaintiff.

28.     Further and in the same conversation with Walters, Walters told Plaintiff that she was aware of other employees prescribed anti-anxiety medication similar to Plaintiff (and in the same family of benzodiazepines) who are employed with Defendant without issue or limitations.

29.     To further confirm her concerns (as discussed *supra*), Plaintiff contacted Defendant's Human Resources ("HR") Department and spoke to Jean Satteson (HR Associate, *hereinafter* "Satteson") who also told her that they were not aware of other employees being questioned or tested in such a cumbersome or unfair manner as Plaintiff.

30.     Shortly thereafter, Plaintiff contacted Defendant's management and HR Department asking if she could get a letter of recommendation from her previous employer stating in simple terms that her prescribed medication did not affect her ability to perform her job.[3] Defendant's management and HR Department informed Plaintiff that any aforementioned letter of recommendation from a previous employer was not necessary.

31.     In or about late-September of 2017, Kowalski-McGraw called Plaintiff and told her she was not being hired (even though she was already hired, offered two available positions within Defendant, given a starting date, and purchased uniforms) because of her prescribed medications and Kowalski-McGraw's perception of Plaintiff's ability to perform her job in light of her health and medications.

32.     Further in the same aforementioned conversation with Plaintiff, Kowalski-McGraw told Plaintiff that there is no policy in place at Defendant restricting what an employee can or cannot be prescribed, but that she has authority to do her own independent research, make hiring decisions without oversight, and that she perceives Plaintiff will work with slow reflexes (due to her aforesaid medication).

33.     Plaintiff expressed concerns to Kowalski-McGraw that she was being unfairly discriminated against due to her medical condition, but instead of investigating or trying to remedy Plaintiff's concerns, Kowalski-McGraw simply re-confirmed that she was not going to be employed with Defendant.

34.     Following her conversation with Kowalski-McGraw, Plaintiff researched the alternative medication recommended to her (as discussed in Paragraph 22) and discovered it has the same listed side-effects as her current medication.

---

[3] Plaintiff's previous employer informed Plaintiff that they would be willing to write Defendant a letter of recommendation stating to that affect in the hopes of alleviating any concerns Defendant had hiring Plaintiff.

35.     Plaintiff escalated her concerns to Defendant's management, but unfortunately no attempts were made to resolve Plaintiff's legitimate concerns of discrimination and Defendant refused to engage in the interactive process with Plaintiff, reasonably accommodate her disabilities, and/or allow Plaintiff to start her employment.

36.     Plaintiff therefore believes and avers that Defendant's failed to accommodate her and terminated/failed to hire her in violation of the ADA.

**COUNT I**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**([1] Actual/Perceived/Record of Disabilities Discrimination; [2] Retaliation; [3] Failure to Accommodate)**

37.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38.     As a result of her serious health conditions (discussed *supra*), Plaintiff required prescription medication to treat her anxiety.

39.     Despite Plaintiff's aforementioned health conditions, she was still able to perform the duties required for her job with Defendant; however, Plaintiff did require reasonable medical accommodations at times, specifically, allowing her to continue to use her prescribed medication while working for Defendant.

40.     In response to Plaintiff's health conditions and need for reasonable accommodations, Plaintiff was subjected to unfair and cumbersome pre-employment practices that were not exhibited towards other similarly situated employees or prospective employees.

41.     Plaintiff expressed concerns to Defendant's management and HR Department, including but not limited to Kowalski-McGraw, Walters and Satteson regarding the unfair and discriminatory treatment she was being subjected to; however, her concerns were not properly

addressed or resolved in any meaningful way and Defendant's management continued to refuse to reinstate or hire Plaintiff.

42.     After initially being hired and set a starting date, Plaintiff was terminated and/or not hired for employment employment shortly after disclosing to Defendant's management her prescribed medications, health conditions, and need for reasonable accommodations.

43.     Therefore, Plaintiff believes and avers she was denied reasonable accommodations and employment from Defendant in violation of the ADA because: (1) her known and/or perceived health problems; (2) her record of impairment; (3) her complaints of discrimination; and/or (4) her requested accommodations.

44.     Plaintiff also believes and therefore avers that she was terminated and/or not hired by Defendant because of their failure to accommodate her disabilities.

45.     These actions as aforesaid constitute unlawful violations under the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendant is to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B.      Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.      Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress, pain, suffering, and humiliation); and

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, A 19020
(215) 639-0801

Date: June 26, 2018

9